IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No.: 4:21-cr-00552-SAL-7 |
| v. | **ORDER** |
| DERRICK LEE CUNNINGHAM | |

This matter is before the court on Defendant Derrick Lee Cunningham's Motion to Suppress, initially filed pro se on December 16, 2022, and then filed by counsel on January 20, 2023. [ECF Nos. 395, 402.] The government responded to the Motion on February 10, 2023. [ECF No. 410.] The court held a hearing on Cunningham's Motion on February 15, 2023. For these reasons, the court now denies his Motion.

**FACTUAL BACKGROUND**[1]

The Drug Enforcement Administration and the Myrtle Beach Police Department investigated a drug-trafficking organization that was allegedly distributing multi-ounce quantities of methamphetamine, heroin, and cocaine in the Myrtle Beach area. Former Myrtle Beach Police Department officer Chad O'Riley served as one of the case agents and a member of the DEA task force. On February 23, 2021, DEA agents obtained court authorization to intercept the calls and texts of a cell phone used by Leroy Cunningham, the lead defendant in this case. Through these

---

[1] These facts are based on the parties' briefing, the docket history, Chad O'Riley's testimony (case agent and DEA Task Officer with Myrtle Beach Police Department), and Ryan Alvarado's testimony (Myrtle Beach Police Department officer who stopped Defendant's vehicle), which the court found credible.

1

intercepted calls[2], law enforcement connected Defendant to Leroy and the drug-trafficking organization.

The intercepted communications revealed that Defendant regularly communicated with Leroy about dealing drugs. In fact, the calls and texts showed Defendant allegedly acquired drugs, including heroin, meth, and cocaine, from Leroy on a frequent basis.[3] Of particular importance to Defendant's motion and this order, agents intercepted communications on April 14, 2021, in which Defendant told Leroy he needed to get some drugs around 7:00 PM. Law enforcement officers were staking out Leroy's residence on April 14, 2021, from across the street and saw Leroy arrive at home. The officers then intercepted a call around 7:46 PM during which Leroy told Defendant he was home.

About six minutes after Leroy called Defendant, a white Cadillac arrived at Leroy's residence. Law enforcement knew that Defendant drove a white Cadillac that matched the description—an older model with a soft top—of the car that showed up at Leroy's house. Just three minutes after arriving at Leroy's house, the white Cadillac drove off. After these observations, Officer Chad O'Riley radioed Officer Ryan Alvarado—a patrol officer with Myrtle Beach Police Department— and instructed him to stop the white Cadillac.

Officer Alvarado then drove past Defendant, who had stopped his vehicle in the middle of the road and then turned into the driveway of an abandoned residence. After the two passed each other,

---

[2] Some of these intercepted calls were introduced at the suppression hearing. Others were represented by corresponding linesheets. According to Officer O'Riley, linesheets are self-generated reports from the wire monitoring system that transcribe and summarize recorded conversations. After the linesheets were generated, they were checked for accuracy against the actual recordings by Officer O'Riley.

[3] Linesheets summarizing the communications introduced at the suppression hearing provided the two men discussed selling "fish scale," "cream," "girl," "food," and "that 7." Officer O'Riley testified that, based on his years of experience, these slang terms refer to high quality cocaine, crystal meth, powder cocaine, heroin, and a quantity of drugs, respectively.

Officer Alvarado executed a U-turn and turned on his blue lights to approach Defendant. According to Officer Alvarado, Defendant was already out of his vehicle and walking away from it when Officer Alvarado turned on the blue lights. During the traffic stop, Defendant allowed officers to search his car and stated that the car contained no drugs. A K9 officer arrived on scene to assist the search. Officer Alvarado discovered a bag of, what appeared to be, cocaine near the "bush line, adjacent to the vehicle." Officer Alvarado then arrested Defendant for driving without a valid license, as the officers had not yet field tested the alleged cocaine to confirm its identity. Two days after Defendant's arrest, agents intercepted calls between Defendant and Leroy during which Leroy said officers "didn't see [Defendant] throw [the drugs]," but Defendant acknowledged the officers found cocaine "off [him]."

On August 24, 2021, a grand jury charged Defendant, along with others, with one count of conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C), and one count of distributing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2. [ECF No. 41.] Defendant pleaded not guilty on September 9, 2021. [ECF No. 97.] More than a year later, though represented by counsel, Defendant wrote the court moving to suppress evidence obtained by law enforcement. [ECF No. 395.] Defendant's counsel refiled the motion on January 20, 2023. [ECF No. 402.] The government responded on February 10, 2023. [ECF No. 410.] With the benefit of oral argument, the matter is now ripe for resolution.

**LEGAL STANDARD**

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ." U.S. Const. amend. IV. Generally, police must secure warrants before conducting searches and

3

seizures. *See Kentucky v. King*, 563 U.S. 452, 459 (2011). But this requirement is subject to several exceptions, including brief investigatory stops. *See Terry v. Ohio*, 392 U.S. 1 (1968). Because traffic stops are more like investigatory stops than a custodial arrests, courts analyze them under the standard established in *Terry*. *United States v. Williams*, 808 F.3d 238, 245 (4th Cir. 2015) (citing *Arizona v. Johnson*, 555 U.S. 323, 330–31 (2009)). Officers thus must have "a reasonable, articulable suspicion that criminal activity is afoot" to conduct traffic stops. *Williams*, 808 F.3d at 245. Whether reasonable suspicion exists is determined by the totality of the circumstances and requires a "particularized and objective basis for suspecting the person stopped of criminal activity." *United States v. Singh*, 363 F.3d 347, 354–55 (4th Cir. 2004) (citations and internal quotations omitted).

## DISCUSSION

Though Defendant failed to identify what evidence he wished to suppress in his motion, he specified at trial he wished to suppress only the drugs that officers uncovered after his traffic stop. Defendant asked the court to suppress the drugs on the basis that the government failed to establish a nexus between the drugs and Defendant. The government offered three arguments in response: (1) Defendant's motion raises an evidentiary concern that is best left for trial and not a motion to suppress; (2) Defendant was not seized when he allegedly discarded the drugs, so the discovery did not result from an unlawful search; and (3) Officer Alvarado had reasonable suspicion to stop Defendant, so the discovery of the discarded drugs during the stop was lawful. The court agrees with the government and addresses each argument in turn.

As an initial matter, the court agrees that Defendant's ultimate argument, that the drugs should be suppressed because there is an insufficient nexus between them and Defendant, is not typical for a suppression motion. Generally, district courts may suppress evidence when it is obtained in

4

violation of a defendant's constitutional rights. *See Davis v. United States*, 564 U.S. 229, 232–32 (2011). But Defendant does not seem to allege a violation of his constitutional rights. He instead merely argues the government has failed to prove the drugs are his. To convict Defendant, the government must carry its burden of proof at trial and prove beyond a reasonable doubt that the drugs discovered in the yard of the abandoned house belonged to Defendant. But that is for another day. The court therefore focuses the majority of this order on whether law enforcement violated Defendant's rights when they discovered the drugs.

The court finds that Defendant was not seized at the time the officers discovered the cocaine, so his Fourth Amendment rights were not violated. If a defendant discards evidence before he is seized by officers, then the recovery of the evidence is not the fruit of a seizure, let alone an unlawful one, and will not be suppressed. *California v. Hodari D.*, 499 U.S. 621, 629 (1991). "A person is 'seized' within the meaning of the Fourth Amendment if, 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *United States v. Slocumb*, 804 F.3d 677, 681 (4th Cir. 2015) (citations omitted). Further, a "defendant who flees the police in response to an assertion of authority has not been seized, and thus his Fourth Amendment rights are not implicated." *United States v. Brown*, 401 F.3d 588, 594 (4th Cir. 2005) (citing *Hodari D.*, 499 U.S. at 629.).

As conveyed by Officer Alvarado at the suppression hearing, the totality of the circumstances shows Defendant was not seized when he allegedly discarded the drugs. When responding to Officer O'Riley's radio instruction to stop Defendant, Officer Alvarado drove past Defendant while traveling in the opposite direction. Before Officer Alvarado activated his blue lights, Defendant had turned into the driveway of an abandoned home and exited his car. Officer Alvarado then performed a U-turn, activated his blue lights, and approached Defendant and his stopped car.

5

While the mere sight of an officer may cause a reasonable driver to pay closer attention to his driving, it would not cause the driver to believe he was not free to drive away. And Officer Alvarado testified that Defendant exercised freedom of movement and turned into an abandoned residence immediately after Alvarado passed him. Moreover, even if Defendant's decision to leave the street could be construed as fleeing the sight of an officer, Defendant still was not seized. A fleeing suspect is not seized until officers physically apprehend him, or he submits to the officers' show of authority. *See Hodari D.*, 499 U.S. at 626–29. Because Defendant had not been seized, and he allegedly discarded the drugs before Officer Alvarado actually seized him, the officers' discovery of the drugs did not violate Defendant's Fourth Amendment rights. The court thus denies Defendant's suppression motion on this ground.

Even if Defendant were seized when he allegedly discarded the drugs, the officers' stop and subsequent discovery of the drugs was lawful. Defendant's traffic stop was lawful if Officer Alvarado had reasonable suspicion that Defendant was engaged in criminal activity at the time of the stop. *Williams*, 808 F.3d at 245. The court evaluates whether Officer Alvarado had reasonable suspicion under the totality of the circumstances to determine whether Alvarado had a "particularized and objective basis for suspecting [Defendant] of criminal activity." *See Singh*, 363 F.3d at 354–55. And under the "collective-knowledge doctrine" courts may "substitute the knowledge of the *instructing officer or officers* for the knowledge of the *acting officer*." *United States v. Massenburg*, 654 F.3d 480, 493 (4th Cir. 2011) (citations omitted).

Officer O'Riley's and Officer Alvarado's testimony conveyed that Defendant was likely engaged in criminal activity when he was stopped. Before the stop, DEA and Myrtle Beach Police Department intercepted several communications between Defendant and Leroy Cunningham, the alleged leader of a drug-trafficking organization. These communications revealed that Defendant

often acquired drugs from Leroy. Of importance, law enforcement intercepted communications between Defendant and Leroy Cunningham on April 14, 2021, which indicated Defendant planned to pick up drugs from Leroy around 7:00 PM. Officers intercepted a call from Leroy to Defendant during which Leroy said he was home. Just minutes later, officers staking out Leroy's residence witnessed a car known to be driven by Defendant arrive at the apartment and then leave just three minutes later. These observations, taken together, form an objective, articulable basis that Defendant had just picked up drugs from Leroy's house and possessed them in his car when he left.

Officer O'Riley then radioed Officer Alvarado to stop Defendant based on the possibility he was transporting drugs. Based on the intercepted calls and observations of the surveilling officers, Officer O'Riley had reasonable suspicion that Defendant was breaking the law when he instructed Officer Alvarado to pull over Defendant. Officer O'Riley's reasonable suspicion is imputed to Officer Alvarado pursuant to the collective-knowledge doctrine. *See Massenburg*, 654 F.3d at 493. The court therefore finds that Officer Alvarado had reasonable suspicion to stop Defendant, and the discovery of the drugs was lawful under the Fourth Amendment. The court consequently denies Defendant's motion.

## CONCLUSION

For these reasons, Defendant's Motions to Suppress, ECF Nos. 395 and 402, are **DENIED.**


**IT IS SO ORDERED.**

March 14, 2023  
Columbia, South Carolina

/s/Sherri A. Lydon  
Sherri A. Lydon  
United States District Judge